JOHN HOLLAR, ET AL. *v.* PETER HARNEY, ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—988.]

**Dedication of Land for a Church by Parol.**

A dedication of land for the use and benefit of a religious society may be made by parol, and where it is so dedicated and not formally conveyed but is occupied and possessed and used by a church adversely to all others from 1853 to 1879, such church has good title thereto, and persons seceding therefrom and organizing another church society can not secure a paramount title thereto by procuring a conveyance from those holding the record title. Such a deed will be canceled at the suit of the organization to whom the land was dedicated.

APPEAL FROM HARRISON CHANCERY COURT.

May 10, 1883.

OPINION BY JUDGE LEWIS:

In 1853, a local religious society called Mt. Pleasant Church, belonging to the Methodist Episcopal Church South, purchased by parol from Christian Waggoner a small parcel of land in Harrison county upon which to erect a new house of worship, which land adjoined a lot whereon stood a building used by that society as a place of worship and also as a school-house until it burned in 1858. Waggoner, though in possession of the land sold, does not appear to have

had more than the equitable title thereto, and died without making a conveyance.

Though the lot was purchased in 1853, the new church building was not commenced until 1859 and perhaps not fully completed until 1861. It was built by the members of that local church, assisted by other persons, some of whom were members of other denominations, and some not members of any church.

There is some evidence tending to show that some of those who contributed towards the erection of the building did so with the understanding that it was to be free for all denominations of Christians to worship in, and some of the witnesses testify that a vote was taken and a majority of those present on the occasion voted in favor of it being a republican and not a denominational church building. Other witnesses, however, testify that it was built with the understanding that it was to be a Methodist house of worship. But, however that may be, it does not appear that the Methodist church organization at Mt. Pleasant or those in authority in that church ever consented to give up the right of that society to own and control it. On the contrary, the building was erected under the direction and supervision of the members of the local church, and after it was completed was recognized as a Methodist house of worship, and was claimed, used and controlled by the local society belonging to the Methodist Episcopal Church South, of which appellants were the members, without question or dispute by any other religious society, or by any individual until 1879.

But in 1866 some of the members of that society seceded, and organized a new local society which was attached to and became a part of the Methodist Episcopal Church of the United States. Although that society has since 1866 been permitted to use the same house as a place of worship, it does not appear from the record to have set up an adverse or distinct claim to the ownership or use thereof. Nor had there been any controversy or dispute between the two local societies in regard thereto until January, 1879, when appellants procured one Charles Argo, who in some way not shown by the record became the owner of the legal title to the lot, to convey the church property to them as trustees of the new local society belonging to the Methodist Episcopal Church of the United States.

After the execution of that deed, appellees for themselves and the other members of the original local society of the Methodist Church

South brought this action against appellants and Charles Argo, and in their petition asked judgment of the court canceling said deed and quieting their title to the property in dispute. Upon the final trial the lower court adjudged that the deed from Argo to appellants be canceled, and that the Methodist Episcopal Church South at Mt. Pleasant have all the rights and privileges to said property that they had in 1866 at the time and immediately prior to the division by reason of appellants seceding and reorganizing under a different conference. From that judgment this appeal is prosecuted.

It does not make any difference that Waggoner had only an equitable title at the time he sold the lot to the local society now represented by appellees, for Waggoner was at the time in possession of and was the owner of the lot and there is nothing in the record to show that Argo at that time had any title whatever, or if he did that he had the right to convey it to another person than Waggoner or his vendee. Nor does it appear that appellants ever purchased the lot from Argo or any one else, and if they had done so, it would not avail them, as appellees were at the time in the adverse possession. Nor does it make any difference that the purchase by the society now represented by appellees was by parol, for it has been held by this court that a dedication of land for the use and benefit of a religious society may be made by parol. See *McKinney v. Griggs,* 5 Bush (Ky.) 401, 96 Am. Dec. 360, and authorities there cited.

It thus appears that in 1866 the society now represented by appellees held the possession and claimed and used the land dedicated in 1853 to the use and benefit of that society. Such being the case the effect of the secession and withdrawance from that society of appellants and those they now represent was to deprive the latter of the rights and use of the property and to leave the society they withdrew from in complete possession and the owners of the property, and entitled to the whole use thereof. For it has been held by this court in the case of *McKinney v. Griggs,* 5 Bush (Ky.) 401, 96 Am. Dec. 360, that Gen. Stat. 1881, ch. 13, §3, subsec. 4, which provides in a case of a schism or division in a society for the joint use of the church for divine worship by both parties, does not apply here, the Methodist Church of the United States and the Methodist Church South being distinct religious organizations.

There being no other claimants to the church property or of the right to the use thereof, in whole or in part, in opposition to or

jointly with appellees, except appellants, who represent a local society that had no existence when the land was dedicated and the building erected, nor until 1866, we are of the opinion the lower court properly adjudged the deed from Argo to appellants should be canceled and that appellees have all the rights and privileges to the property.

Appellants in their answer admit that they are not the exclusive owners of the church property in dispute, and aver they are willing for and pray the court to render judgment causing a deed to be made giving both churches worshiping at the Mt. Pleasant Church the right to use and enjoy said property jointly, and one of the errors assigned is that the court failed to adjudge that appellants had an interest in the building equal to the amount expended thereon by its members, and that they had the right to the use thereof as a separate denomination in proportion to the amount so expended, having been induced to make repairs thereon with the understanding that they had the right to use and enjoy the house as a separate and distinct denomination.

In their answer appellants deny that the land was dedicated for the use and benefit of the society now represented by appellees, or that it has been held and claimed as the exclusive property of the society, and base their claim to a joint use of the church property upon the alleged understanding had in 1859 when the building was erected that it should be open to all Christian denominations to worship in and for the exclusive use of none.

Not considering the inconsistency of this position with the act of appellants in procuring without notice to appellees, and in disregard of the rights of all others, a deed from Argo to themselves of the absolute title to the property, it is sufficient answer to say, in addition to what has already been said in this connection, that when the house was erected the society now represented by appellants had no existence; on the contrary they were then members of the society of appellees, and as such members united in holding, claiming and using the church property for that society and as its property. Having consented to and concurred in the claim and possession of that society and ignored and disregarded the understanding, if it was ever binding and existing, it is too late now to rely upon it, especially as no other society or individuals now set up any claim to the property.

There is some proof conducing to show that after the deed was procured from Argo the house was repaired by the joint labor and expenditure of both of the denominations, with the understanding that appellants and the society they represent should have the right to use the house as a place of worship. But the claim to the joint ownership and use of the house was not based upon the ground in the answer filed by appellants. As the issue was as to the title and ownership of the property the judgment must be affirmed. But· at the same time in affirming the judgment we do not mean to be understood as determining that the society represented by appellants shall be deprived altogether of the use of the house, which the record does not show has yet been done, i. e., that the court may not hereafter, adjudge them entitled to a reasonable use thereof, or to a reimbursement for the labor and expenditures by them in repairing the house, if it shall turn out it was repaired with such an understanding, the court in our opinion having notwithstanding that judgment the power to enforce ·and carry out upon equitable principles any contract or understanding in respect to the repairs done upon the house.

The judgment is *affirmed*.

*J. Q. Ward, for appellants.*

*L. M. Martin, for appellees.*

[Cited, *Stith v. Carter,* 22 Ky. L. 1488, 60 S. W. 725.]